## CHARLES A. REYNOLDS vs. DANIEL WILKINS.

Representations by a creditor to a debtor, that he did not wish for the property so much for his own security, as to secure it to the debtor from attachment by other creditors, made to obtain a bill of sale of property to secure a debt, then justly due, are not conclusive evidence of fraud; but circumstances merely to be left to the jury from which fraud may be inferred.

TRESPASS against the defendant, as sheriff of the county, for the taking of two horses, by one of his deputies, belonging to the plaintiff. The taking was justified, in a brief statement, by an attachment thereof, as the property of *Washburn & Fling*. The horses were once the property of *Washburn & Fling*, and the plaintiff claimed them by virtue of two bills of sale from them to him, as collateral security for the payment of two notes given by them to him, and proved, that the value of the horses was not more than two thirds as much, as the sums due on the notes, and also proved a delivery of the horses to him. The defendant then called *Washburn & Fling*, who testified that they were indebted to the plaintiff in about the sum of $150,00, who applied to them, and wished to have a bill of sale of the horses to secure him, and stated to them, that it was a hard time for money, and that he was afraid their creditors would trouble them; that if they would put the horses into his hands, so that they could not be attached, they should have the control thereof as much, as if no bill of sale had been given; and that he did not want the bill of sale so much for his security, as to prevent an attachment; that the plaintiff advised them to put all their property into his hands to prevent its being attached and sacrificed by their creditors, but that they declined doing more than signing the bills of sale of these two horses. There was much other testimony in the case, not pertinent to the questions of law.

Reynolds *v.* Wilkins.

The counsel for the defendant requested *Weston C. J.*, at the trial, to instruct the jury, " that whatever might have been the secret object of the plaintiff, yet if he persuaded the debtors to convey to him, with a view to delay and defraud their creditors, and they were induced by his representations and promises to convey their property to him with such design on their part, which design was known and encouraged by him, and which design was also held out by him, as his object, that it constituted such a fraud upon creditors as vitiated the transaction ; although his sole motive might *have been to secure his own demand against them ;* and that he was estopped to deny, that such was his intention and object, when such was the only object avowed." The Chief Justice instructed the jury, that it was in itself no fraud to give, or receive, a pledge for the payment of an honest debt, especially if the pledge did not exceed in value the amount of the debt ; that if this, however, was done collusively, while the real object was to delay or defeat other creditors, it could not be sustained. This point was left to the jury, as a question of evidence, the Judge at the same time remarking to them, that they would consider whether the plaintiff was not looking only to his own security, and whether his suggestions to the debtors, that unless they secured him, the property was exposed to attachment by others, were not made with a view to bring them into the measure. The instruction requested was not given. The verdict was for the plaintiff, and the defendant excepted to the charge of the Judge, and to his refusal to give the instruction requested.

*W. P. Fessenden*, for the defendant, cited and relied on the case, *Howe* v. *Ward,* 4 *Greenl.* 195, to show, that the Court should have given the instruction requested by the counsel for the defendant. Our request was founded on the principle, that if the sellers intended to defraud creditors, and the purchaser was knowing of such intention, that the sale would be void, as to creditors, even if the purchaser had paid for the property, or had debts to its value. The charge was in substance, that if the conveyance was received by the plaintiff only for his security, without intent to defraud, it was good, without any reference to the inducements held out by him to obtain the property, or of his knowledge of the fraudulent

intention of the debtors. When the parties at the time avowed the design to be fraudulent, the Court cannot hold it to be lawful.

*A. G. Jewett*, for the plaintiff, contended, that this was but the common case of one creditor obtaining a priority over another. The debt to him was fairly due, and the property obtained less than the amount. The object then was legal and justifiable, and the worst that can be said is, that the plaintiff made use of misrepresentations to obtain the property by a sale, instead of making expense by resorting to process of law. The case cited, relates only to the case of one enabling a debtor to realize the value of the property himself, and carry it beyond the reach of his creditors, and not of an honest creditor obtaining security, as in this case.

After a continuance, *nisi*, the opinion of the Court was drawn up by

EMERY J. — This is a case of exceptions. The defendant's counsel requested the Judge to instruct the jury, that whatever might have been the secret object of the plaintiff, yet, if he persuaded the debtors to convey to him with a view to delay or defraud their creditors, and they were induced by his representations and promises to convey their property to him with such a design on their part, which design was known and encouraged by him, and which design was also held out by him, as his object, that it constituted such a fraud upon creditors as vitiated the transaction, although his sole motive might have been to secure his own demand against them; and he was estopped to deny that such was his intention and object, when such was the only object avowed.

But on this point the Chief Justice said, that it was altogether a question of evidence; that they must be satisfied that his own security was not the sole object which the plaintiff had in view; that he must have had the design on his part to aid the debtors in defrauding their creditors; and if they were satisfied that the plaintiff had no other object in view, but his own security; if there was no fraudulent design towards creditors on his part, then the transfer was a valid one, and the plaintiff must prevail. That it was in itself no fraud to give or receive a pledge for the payment of an honest debt; especially if the pledge did not exceed in value the amount of the debt; that if this however was done collusively

while the real object was to delay or defeat other creditors, it could not be sustained ; and he left this point to the jury, as a question of evidence ; at the same time remarking to them, that they would consider whether the plaintiff was not looking only to his own security, and whether his suggestions to *Washburn & Fling*, that unless they secured him, the property was exposed to the attachment of others, were not made with a view to bring them into the measure. The jury returned their verdict for the plaintiff.

To require the direction from the Court to the jury, in the precise terms of the request, would be going a length that we apprehend decided cases do not warrant. The doctrine of estoppel does not apply to this case. Even in the case of a deed it does not invariably control. In *Doe*, on the demise of *Freeland* v. *Burt*, 1 *T. R.* 701, on trial of an ejectment for a cellar and wine vaults in *Westminster* ; the lessor *was not estopped by his deed* from going into evidence to shew, that the cellar was not intended to be demised. " It was deemed by the Court, that considering the nature " of the property, it was proper to let in evidence to shew the " state and condition of it at the time the lease was granted. *Prima* "*facia*, indeed the property in the cellar would pass by the demise, " but that might be regulated and explained by circumstances." By much stronger reason should the circumstances be all opened to the consideration of a jury, when a contest arises, as to a transfer of property from embarrassed debtors to secure an honest debt ; more especially if other honest creditors are likely to be affected by the alienation. Here it would seem there was no deficiency in quantity of evidence. The whole of it was particularly charged upon their consideration. It is possible that had we been sitting as jurors, we might have come to a different conclusion from what they did. Doubtless the circumstances appearing in the course of evidence, calculated to impeach the transaction, were powerfully urged to the jury, the proper tribunal to give to them their just estimation. The proof in all cases relating to fraudulent conveyances, to be availing, as stated in the opinion of the Court, in *Howe* v. *Ward*, cited and relied on by the defendant's counsel, " must be found suf- " ficient to convince the jury, that the conveyance was made for " the purpose of defrauding a creditor in particular, or subsequent " creditors generally, as well as those, who were creditors at the

time, if there were any such." The late Chief Justice then proceeds to deduce a number of propositions. The first is, " if a con-" veyance is made by a man who is insolvent upon a good and " sufficient consideration advanced to him, but not *bona fide,* and " the purchaser is conusant of and assenting to the fraudulent intent, " it is void against creditors." On this the defendant relies as justifying his request for direction, that the plaintiff was estopped.' We cannot coincide with his views. The fraudulent intent was to be found not by application of the principle of estoppel, which has been thought unfavorable to the development of truth, but by subjecting all the acts and sayings of the parties at the transfer, and before and after, in this case, situated as it is by the evidence, to the severe discrimination of an impartial tribunal. We should be rejoiced, if we could be successful in suppressing every species of fraud. Here both the debtors were called, as witnesses, and a contrariety of evidence was submitted to the jury. They had the direction of the Court " that they must be satisfied, that the plain-" tiff had the design on his part to aid the debtors in defrauding " their creditors, and that he had no other object in view but his " own security. If there was no fraudulent design toward creditors " on his part, the plaintiff must prevail. That it was no fraud to " give or receive a pledge for an honest debt; that if this however " was done collusively, while the real object was to delay or defeat " other creditors, it could not be sustained."

We do not perceive, that the jury were wrongfully instructed, and there must be judgment on the verdict.